**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

NINA SCHERR,

                    *Plaintiff,*                                                    **20-CV-04422**

          v.                                                                                 **COMPLAINT**

SPECTRUM SCIENCE COMMUNICATIONS, INC. and                  **JURY TRIAL DEMANDED**
MICHELLE STRIER,

                    *Defendants.*
------------------------------------------------------------------------×

          Plaintiff NINA SCHERR, by her counsel Young & Ma LLP, alleges for her Complaint

against Defendants Spectrum Science Communications, Inc. and Michelle Strier as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.        Plaintiff Nina Scherr ("Ms. Scherr" or "Plaintiff") seeks damages, cost, and other relief

against Defendants Spectrum Science Communications, Inc. ("Spectrum" or the "Company") and

Michelle Strier ("Strier")(collectively, "Defendants") for gender, maternity status and pregnancy

discrimination; gender/maternity status/pregnancy stereotype; failure to provide accommodations;

and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title

VII"), 42 U.S.C. § 2000e *et seq.*; Americans with Disabilities Act ("ADA"), codified at 42 U.S.C.

§§ 12101 *et seq*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 290 *et

seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et

seq.*

2.        Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory

damages, emotional distress damages, punitive damages, liquidated damages, pre-judgement and

post-judgment interest, legal fees and costs based on Defendants' violations of Plaintiff's statutory

rights to equal employment opportunity, freedom from gender/marital status/pregnancy discrimination and stereotype, reasonable accommodation and retaliation.

## JURISDICTION AND VENUE

3.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants have violated Plaintiff's rights under Title VII and the ADA.

4.     On or about March 12, 2020, Plaintiff filed a Complaint of Discrimination with the New York City Commission on Human Rights and cross-filed the Complaint with the United States Equal Employment Opportunity Commission ("EEOC").

5.     Plaintiff requested a "right to sue" letter from the NYC Commission on Human Rights and EEOC on or about March 24, 2020.  The NYC Commission on Human Rights issued notice of administrative closure of this file on March 30, 2020.  The EEOC issued a Right to Sue Letter on June 2, 2020 which was received by Plaintiff on the same day.

6.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims as they are so related to the Title VII and ADA claims and form part of the same case or controversy.

7.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as the events giving rise to Plaintiff's claims occurred within this District.

## PARTIES

8.     Ms. Scherr, at all times relevant hereto, was and is a resident of New York County in the State of New York.

9.     Upon information and belief, at all times relevant hereto, Defendant Spectrum was and is a foreign business corporation organized under the laws of the District of Columbia, doing business

in New York City with offices located at 250 Vesey Street, Suite 2630, New York, New York 10281.

10.     Upon information and belief, Defendant Strier is an Arizona resident who remotely managed employees in the New York City office of Spectrum.

## STATEMENT OF MATERIAL FACTS

11.     Ms. Scherr was in her fourteenth year at Ruder Finn, then as Senior Vice President and U.S. Lead of ICX (Internal Customer Experience), when Spectrum approached her.  She was working with key clients such as Citi, MetLife GTO, Amtrak, Pfizer, Avery Dennison RBIS, American Express, Kadena, and UCB Pharma.  She has experience in employee engagement, internal communications, leadership transformation, employee restructuring, talent recruitment, storytelling and narrative development, executive thought leadership, events, and crisis communications.  She also has a Bachelor of Science in Communications with a concentration in PR and Liberal Arts in Sociology from Boston University College of Communications.  When Spectrum wooed her to leave Ruder Finn, they promised access to large accounts, the ability to work from home, and a family-friendly workplace (all of which turned out to be untrue, as further outlined below).

12.     Ms. Scherr joined Spectrum in March 2019 as an Executive VP of the Biotech practice. She worked on providing strategic counsel to biotech clients at various stages of development including in oncology, diagnostics, dermatology and immunotherapy; strategic positioning and counsel for one of the largest biotech IPOs of 2019; conducting messaging and positioning workshop to inform development of corporate narratives; crisis management and preparedness in relation to competitor news and drug supply issues; managing the weekly internal company

newsletter; and managing practice financials ranging from 1-3m per month including forecasting, staffing and practice communications.

13.     Ms. Scherr turned down two competing offers to come to Spectrum based on the promise of opportunity to run a practice, manage and mentor senior team members, oversee 2-3 large accounts, have executive visibility and resources, and work in an allegedly family-friendly environment.

14.     When Ms. Scherr came on board, she was a 37-year-old mother of a child about to turn two.  She was terminated less than a year later while in her second trimester of pregnancy.  Ms. Scherr reported to Defendant Strier, the Chief Strategy Officer with older children and who preferred women with no children (or had just stepchildren or older children) on her team.  Ms. Scherr noticed right away that she was given only small accounts/projects, while Strier had other preferred employees – that were lesser-performing and had less experience and lower profiles, but did not have small children – running larger accounts.  Ms. Scherr was told soon after joining that she would not lead the practice as discussed when making her decision to join Spectrum, but only operationally run it with Liz Bryan ("Bryan"), who has no biological children and only an older stepson.  Originally at the interview, Ms. Scherr was told she would manage Bryan and Taryn Berman ("Berman").

15.     The Company clearly felt Ms. Scherr added much value, as there was a round of layoffs in April 2019 that did not impact Ms. Scherr.  About this time, Ms. Scherr confided in Chief Human Resources Officer Andrea Sessler ("Sessler") that she was not having the opportunities she was hired for and promised.  Sessler shared Ms. Scherr's report with Defendant Strier without any instruction of prevention of retaliation.

4

16.     In June/July 2019, Strier approached Ms. Scherr and said she "heard" that Ms. Scherr was unhappy.  Ms. Scherr transparently shared that Bryan was not being collegial with her and was actively avoided her.  When Ms. Scherr travelled to D.C. for 3 days, Bryan spent a total of one hour with her when they were supposed to operationally lead together.  Ms. Scherr also mentioned this was time away from a small child and yet did not improve team dynamics between her and Bryan.  The issues discussed had nothing to do with Ms. Scherr's performance, just that she was not where she was hired to be or where she should be at this stage in her career.

17.     In September 2019, on the way to D.C. for a Leadership Team Meeting, Ms. Scherr was bleeding and worried about miscarriage as she was pregnant.  She told Denise Chappell, an SVP in the Health Tech practice who was on the same Amtrak train as her, about this incident.  Yet Ms. Scherr rolled with it and continued to her meeting, as she was intent on doing a good job.

18.     On or around October 28, 2019, when she was around twelve weeks pregnant, Ms. Scherr informed President Michelle Gross ("Gross"), Chief Human Resources Officer Sessler, and Defendant Strier of her pregnancy.  Strier completely brushed it off and had no response.  Gross said she was "***shocked another person will be out***" as other women were on or about to go on maternity leave.  Clearly there was a cap on how many women were allowed to be pregnant at once at Spectrum.  It was apparent that Ms. Scherr would be judged for her health, pregnancy, and time out of the office (as further demonstrated by her termination less than 3 months later).  Ms. Scherr had also shared with both Gross and Strier her previous struggles with high-risk pregnancy.  Given the responses, Ms. Scherr felt incredibly pressured to be always present even despite any health difficulties in her pregnancy.

19.     Shortly thereafter, Ms. Scherr informed Defendant Strier that she needed to take Makena shots (a medication to reduce the risk of preterm birth) once a week starting at sixteen weeks to

prevent a preterm baby like with her first child.  Ms. Scherr told her she would do Monday mornings for the shots but could change it if there were client needs.  Strier superficially answered that she did not care if Ms. Scherr worked from home but did not adjust goals/metrics.

20.     On November 12, 2019, Ms. Scherr went to the hospital for difficulty breathing and suspected blood clots after working late on a new business pitch.  She was back at work the next day.  Defendant Strier and the team were aware of this.

21.     In December 2019, Ms. Scherr had a terrible sinus infection and fever on the 5th and 6th. Defendant Strier and the team also knew of this.  Strier started to repeatedly tell Nina to take care of her health and baby during this time, but simultaneously, Ms. Scherr's projects were taken away from her, making her vulnerable to adverse employment actions.  Ms. Scherr was told to relax, without formal reasonable accommodations.  At no time did Stier or Sessler discuss reasonable accommodations or adjusting expectations if Ms. Scherr needed time for her health/pregnancy, or that addressing her health would not prevent her from layoff shortly thereafter.

22.     Also in December 2019, Berman on Ms. Scherr's team resigned due to the lack of leadership by Defendant Strier.

23.     When Defendant Strier approached Ms. Scherr about relaxing or taking it easy, Ms. Scherr would respond by saying she would let her know what she could and could not do.  Ms. Scherr was concerned with maintaining over 100% work effort and 40% billable target – otherwise she wouldn't hit her bonus, as explained by Strier.  She felt that Ms. Scherr just had to choose between good performance or good health, offering no accommodations on hours or expectations.

24.     This dynamic was clearly demonstrated by an instance where Ms. Scherr stayed till 1 AM on a new business pitch and Defendant Strier indicated that she was not happy with what was produced.  However, the Company was invited to the next round of pitches due to Ms. Scherr's

work.  Strier cut Ms. Scherr out of this pitch (although it was a success): "Glad you're going home. Feel better.  Wanted to talk to you in person but in putting the right team together for the room we've decided to bring Dayna to the pitch, rather than have you go."  Dayna is a mother to two older children and was not let go.  Her role in the company is Business Development and Marketing, not Client or Account Lead as they were positioning her to the prospective client. Clearly, Strier was uncomfortable with Ms. Scherr's pregnancy and yet unwilling to provide her accommodations (because she wanted to fire Ms. Scherr).

25.     After December, Defendant Strier completely ignored Ms. Scherr for several weeks until her layoff.  It was clear Strier was not going to give her more work, despite Ms. Scherr's requests, and had determined she should be laid off.  Strier tried to remain superficially careful about leave issues when addressing Marie Boyle and Maia Arnold, (two employees of the Biotech Practice who were currently out on leave at the time of the termination), always saying the Company was not "replacing" them but hiring temps or freelancers.

26.     Ms. Scherr was terminated on January 7, 2020, with no written feedback on performance issues.  The financial statements for 2019 show her work effort at over 100% and billability over 40% so she met the target for her bonus, which was not received.  Ms. Scherr did phenomenal work with Mirati Therapeutics (she grew it over 50%, secured new work, and had a strong relationship with the client).  However, she was replaced on the account by Chloe Ann Ramsay ("Ramsay"), a single 30-year-old VP with no children.

27.     Ramsay was originally the day-to-day lead on Akcea Therapeutics, which was lost and the stated cause for the layoffs. Yet, she was allowed to replace Ms. Scherr on Mirati and on Ortho Dermatologics, which used to be handled by Berman, who resigned (Ms. Scherr should have been the natural replacement as she knew the client, the account, and what had to be done, as she was

part of the pitch team that won the business and oversaw Berman on it during her tenure as Berman's boss).

28.     Given the loss of the large account Akcea Therapeutics by Bryan (who was in charge of the account) and Ramsay (the day-to-day lead), a lot of work was shifted around to protect these underperformers at the detriment of Ms. Scherr.  At Ms. Scherr's termination, the reasoning was the loss of accounts, which was the fault of employees still at the Company (and have older or no kids), while Ms. Scherr was profitable.  Ms. Scherr's work was used by Defendant Strier to support her preferred employees, who were not pregnant and not mothers to small children.  In fact, Bryan has been promoted to EVP and head of the biotech practice, which was precisely Ms. Scherr's role.

29.     Although Spectrum's pretextual reason for Ms. Scherr's termination was the loss of accounts, it was clear that the Company did not want to accommodate a pregnant woman, even if she added value, at Ms. Scherr's age, experience and salary level.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Gender/Marital Status/Pregnancy Discrimination and Hostile Work Environment
### in Violation of Title VII
### (Against Defendant Spectrum)

30.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

31.     113.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Spectrum.

32.     Defendant was and is an "employer" within the meaning of Title VII.

33.     Plaintiff was and is a female "employee" and is a member of protected classes within the meaning of Title VII.

34.     At all times, Defendant was aware of Plaintiff's gender.

35.     At all times, Defendant was aware that Plaintiff had a young child and since October 28, 2019, was aware of Plaintiff's pregnancy.

36.     By the conduct alleged in this Complaint, Spectrum discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of her employment because of her sex, marital status, and/or pregnancy.

37.     Plaintiff was subjected to a pervasive hostile work environment by Defendant's conduct, and Defendant's unlawful conduct in violation of Title VII is continuing.

38.     The Company engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's sex, marital status, and/or pregnancy in the manner described in the Statement of Facts.

39.     Plaintiff suffered adverse employment actions and damage by the Defendant due to her sex, marital status, and/or pregnancy and hostile work environment that Plaintiff suffered at Spectrum because of her sex, marital status, and/or pregnancy.

40.     As a direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income and damage to reputation.  Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

41.     As a further direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to

her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

42.     Plaintiff is entitled to recover, *inter alia*, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Indeed under Title VII.

**SECOND CAUSE OF ACTION**
**Gender/Marital Status/Pregnancy Discrimination**
**in Violation of New York State Human Rights Law**
**(Against All Defendants)**

43.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

44.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

45.     At all relevant times, Defendants were and are Plaintiff's "employers" within the meaning of the NYSHRL.

46.     At all relevant times, Plaintiff was and is an "employee" within the meaning of the NYSHRL.

47.     Plaintiff is a female and is a member of protected classes within the meaning of NYSHRL.

48.     At all times, Defendants were aware of Plaintiff's gender.

49.     At all times, Defendants were aware that Plaintiff had a young child and since October 28, 2019, were aware of Plaintiff's pregnancy.

50.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's gender, marital status, and/or pregnancy in the manner described in the Statement of Facts.

51.     Plaintiff was severely limited in her career by Defendants' unlawful conduct due to her gender, marital status, and/or pregnancy.

52.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of gender, marital status, and/or pregnancy as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

53.     Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

54.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

55.     Plaintiff's damages include, *inter alia*, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

56.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**THIRD CAUSE OF ACTION**
**Gender/Marital Status/Pregnancy Discrimination**
**in Violation of New York City Human Rights Law**
**(Against All Defendants)**

57.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

58.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

59.     At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

60.     At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

61.     Plaintiff is a female and is a member of protected classes within the meaning of NYCHRL.

62.     At all times, Defendants were aware of Plaintiff's gender.

63.     At all times, Defendants were aware that Plaintiff had a young child and since October 28, 2019, were aware of Plaintiff's pregnancy.

64.     Defendants engaged in, and continue to engage in, unlawful employment practices prohibited by NYCHRL because of Plaintiff's gender, marital status, and pregnancy in the manner described in the Statement of Facts.

65.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

66.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and sexual harassment.

67.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

68.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including

without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

69.     As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

70.     Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII (Against Defendant Spectrum) and**
**NYSHRL and NYCHRL (Against All Defendants)**

71.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

72.     Defendant Spectrum violated Title VII and the ADA, and Defendants Spectrum and Strier violated the NYSHRL and NYCHRL, because they knowingly retaliated against Plaintiff for her complaints in the manner described in the Statement of Facts.

73.     Defendants were aware that Plaintiff engaged in the protected activities alleged above.

74.     Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff in the manner described in the Statement of Facts.

75.      The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

76.     As a direct and proximate result of the unlawful retaliation by, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues

to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Reasonable Accommodation**
**in Violation of ADA, NYSHRL, and NYCHRL**
**(Against All Defendants)**

77.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

78.     The ADA, NYSHRL, and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with a disability.

79.     Defendants failed to provide a reasonable accommodation for Plaintiff's disability by refusing to engage in the mandatory interactive process and cooperative dialogue in good faith to identify a reasonable accommodation for her pregnancy conditions/disabilities.

80.     As such, Defendants have violated the ADA, NYSHRL and NYCHRL.

81.     Additionally, Defendants failed to engage in a cooperative dialogue pursuant to the October 15, 2018 changes to NYCHRL after obtaining multiple notices of Plaintiff's medical needs, and failed to provide a credible written explanation as to why accommodations were not possible for Defendants.

82.     Defendants' termination of Plaintiff and refusal to make reasonable accommodation for Plaintiff on the basis of her pregnancy constituted unlawful discrimination in violation of § 8-502 of the NYCHRL.

83.     As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

14

84.       Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, back pay, front pay, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendants under the NYCHRL.

## JURY DEMAND

85.    Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court grant her the following relief:

A.       Issue a declaratory judgment declaring that the actions of the Defendant, as set forth in this Complaint, violated: (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ; (ii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*; (iii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; (iv) and Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 *et seq.* and (v) that Defendants' foregoing acts of discrimination and retaliation against Plaintiff were intentional and willful.

B.       Enjoin and restrain the Defendant and all persons acting on their behalf, or in concert with it, from engaging in such unlawful discriminatory and retaliatory practices;

C.       Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest (and adjusted to make Plaintiff whole for any increased tax liability incurred by her receipt of a lump sum payment in a single year);

D.       Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E.      Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the Court deems appropriate under the circumstances.

Dated: New York, New York
       June 10, 2020

                                        Respectfully submitted,


                                        By: _____
                                            Tiffany Ma, Esq.
                                            Young & Ma LLP
                                            575 Lexington Avenue, 4th Floor
                                            New York, NY 10022
                                            T: (212) 971-9773
                                            F: (212) 600-2301
                                            tma@youngandma.com